## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **SHIRLEEN GRANVILLE,** | : | **CIVIL ACTION** |
| **PLAINTIFF,** | : | |
| | : | **NO. 3:14-CV-211-RDM** |
| **v.** | : | |
| | : | |
| **AETNA LIFE INSURANCE CO.,** | : | |
| **DEFENDANT.** | : | |

## AETNA LIFE INSURANCE COMPANY'S RESPONSE
## TO PLAINTIFF'S CONCISE STATEMENT OF FACTS

Defendant Aetna Life Insurance Company (hereinafter, "ALIC" and/or "Aetna"), by and through its undersigned attorneys, pursuant to Local Rule 56.1, respectfully submits this Response to Plaintiff's Concise Statement of Facts (Doc. 37).

1.      Admitted. *See also* Defendant Aetna Life Insurance Company's Concise Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (Doc. 39)("Aetna Statement") at ¶1; Aetna Life Insurance Company's Answer with Affirmative Defenses to Plaintiff's Complaint (Doc. 28)("Aetna Answer") at ¶ 12.

2.      Disputed as stated; clarification provided. *Aetna does not "provide long term disability benefits" for covered employees of eligible employees of Penn Foster, Inc. ("Penn Foster").* Aetna does not dispute that it issued a Group Policy to

Penn Foster which Penn Foster used to fund its employee welfare benefit plan, including the provision of long term disability benefits to covered employees of Penn Foster. *See* Aetna Statement at ¶3; Aetna Answer at ¶¶ 3 & 5.

3.     Disputed as stated; clarification provided. *Penn Foster offered its employees a long term disability benefit plan, and Penn Foster funded that Plan through a Group Policy issued by Aetna.* Aetna does not dispute that the Plan was underwritten by Aetna or that Plaintiff was an eligible participant in the Plan. *See* Aetna Statement at ¶¶ 2 – 4.

4.     Undisputed. *See* Aetna Statement at ¶ 8.

5.     Undisputed. *See* Aetna Statement at ¶ 8.

6.     Undisputed.

7.     Disputed in part; admitted in part.   Aetna disputes any Statement based on documents outside the Administrative Record.[1]   In this Statement, Plaintiff cites to documents that are beyond the Administrative Record.   Aetna acknowledges that the cited documents were contained in the STD benefit claim file but that claim was made pursuant to a different benefit plan and by an entirely different department within Aetna.   Aetna only admits that the Administrative Record includes records from   Plaintiff's primary care physician diagnosing

---

[1] Aetna respectfully submits, as attached, an Index of the Administrative Record, to aid the Court in its review of the parties' cross-motions for summary judgment.

Plaintiff with cervicalgia, herniated disc, and spinal stenosis and that Plaintiff complained of neck pain, right shoulder pain with numbness tingling and weakness of the right hand.  *See* Aetna Statement ¶¶ 24 - 25.  *Although Aetna does not dispute Plaintiff's subjective complaints, Aetna counters that these complaints did not rise to the level of functional impairment and further states that an EMG/NCV of Plaintiff's right upper extremity which was performed in August 2011 was negative and that although Plaintiff's August 2011 MRI revealed a severe disc herniation at C6/7, there was only mild congenital stenosis and upon physical exam, there was only some spasm in the trapezius with only a slight decrease in right upper extremity motor strength because of pain.  See* Aetna Statement ¶¶ 46 - 47.

8.    Undisputed.  *See* Aetna Statement at ¶ 15.

9.    Disputed.  Aetna disputes any Statement that is based on documents outside the Administrative Record.  In this Statement, Plaintiff cites to documents that are beyond the Administrative Record.  Aetna acknowledges that the cited documents were contained in the STD benefit claim file but that claim was made pursuant to a different benefit plan and by an entirely different department within Aetna.  Aetna does not dispute that it approved Plaintiff's claim for STD benefits pursuant to that STD Plan from July 15, 2011 through December 5, 2011 and then terminated STD benefits thereafter.  *See* Aetna Statement ¶16.  The Attending

Physician Statements ("APS") submitted in support of that claim are irrelevant to this Court's review of the Administrative Record before Aetna at the time it denied Plaintiff's claim for LTD benefits--a claim that was filed well over six months after the APS referenced in this Statement.

10. Disputed in part; admitted in part. Aetna disputes any Statement that is based on documents outside the Administrative Record. In this Statement, Plaintiff cites to documents that are beyond the Administrative Record. However, Aetna admits that Plaintiff underwent an MRI and the results of that imaging are included in the Administrative Record at Aetna 483-484. Aetna further admits that this MRI study was reviewed during the CCR, in Aetna's letter denying Plaintiff's LTD claim, and on appeal during an independent peer review. *See* Aetna Statement at ¶¶32. Aetna further states that the while Plaintiff appears to have accurately recited the MRI's findings. *Aetna further states that Dr. Swotinsky, a physician Board-certified in Occupational Medicine, reviewed the MRI findings and impressions and characterized those findings in plain English as showing a pinched nerve.* *See* Aetna Statement at ¶59.

11. Disputed in part; admitted in part. Aetna disputes any Statement that is based on documents outside the Administrative Record. In this Statement, Plaintiff cites to documents that are beyond the Administrative Record. Aetna only admits that Plaintiff applied for and received STD benefits for a portion of the STD

period until they were terminated. *Aetna further states that Plaintiff did not appeal Aetna's decision terminating her STD benefits.  See* Aetna Statement at ¶ 16. *Aetna further states that approving STD benefits from July through December 2011 is irrelevant to Aetna's November 9, 2012 decision denying LTD benefits effective January 11, 2012.*

12.    Disputed in part; admitted in part.  Aetna disputes any Statement that is based on documents outside the Administrative Record.  In this Statement, Plaintiff cites to documents that are beyond the Administrative Record.  Aetna only admits that Plaintiff applied for and received STD benefits for a portion of the STD period until they were terminated. *Aetna further states that Plaintiff did not appeal Aetna's decision terminating her STD benefits.  See* Aetna Statement at ¶ 16. *Aetna further states that approving STD benefits from July through December 2011 is irrelevant to Aetna's November 9, 2012 decision denying LTD benefits effective January 11, 2012.*

13.    Disputed in part; admitted in part.  Aetna disputes any Statement that is based on documents outside the Administrative Record.  In this Statement, Plaintiff cites to documents that are beyond the Administrative Record.  Aetna only admits that Plaintiff applied for and received STD benefits for a portion of the STD period until they were terminated. *Aetna further states that Plaintiff did not appeal Aetna's decision terminating her STD benefits.  See* Aetna Statement at ¶ 16.

*Aetna further states that approving STD benefits from July through December 2011 is irrelevant to Aetna's November 9, 2012 decision denying LTD benefits effective January 11, 2012.*

14.    Disputed in part; admitted in part.  Aetna disputes any Statement that is based on documents outside the Administrative Record.   In this Statement, Plaintiff cites to documents that are beyond the Administrative Record.  Aetna only admits that Plaintiff applied for and received STD benefits for a portion of the STD period until they were terminated.  *Aetna further states that Plaintiff did not appeal Aetna's decision terminating her STD benefits.   See* Aetna Statement at ¶ 16. *Aetna further states that approving STD benefits from July through December 2011 is irrelevant to Aetna's November 9, 2012 decision denying LTD benefits effective January 11, 2012.*

15.    Disputed in part; admitted in part.  Aetna disputes any Statement that is based on documents outside the Administrative Record.   In this Statement, Plaintiff cites to documents that are beyond the Administrative Record.  Aetna only admits that Plaintiff applied for and received STD benefits for a portion of the STD period until they were terminated.  *Aetna further states that Plaintiff did not appeal Aetna's decision terminating her STD benefits.   See* Aetna Statement at ¶ 16. *Aetna further states that approving STD benefits from July through December*

2011 is irrelevant to Aetna's November 9, 2012 decision denying LTD benefits effective January 11, 2012.

16.     Disputed in part; admitted in part.  Aetna disputes any Statement that is based on documents outside the Administrative Record.   In this Statement, Plaintiff cites to documents that are beyond the Administrative Record.  Aetna only admits that Plaintiff applied for and received STD benefits for a portion of the STD period until they were terminated.  *Aetna further states that Plaintiff did not appeal Aetna's decision terminating her STD benefits.   See* Aetna Statement at ¶ 16. *Aetna further states that approving STD benefits from July through December 2011 is irrelevant to Aetna's November 9, 2012 decision denying LTD benefits effective January 11, 2012.*

17.     Disputed as stated; clarification provided.  *On December 19, 2011, Aetna did not approve ongoing STD benefits.  To the contrary, in this letter, Aetna only advised Plaintiff that her claim for STD benefits was approved from July 15, 2011 through December 5, 2011.   See* Aetna 874.   Plaintiff's citation to and reliance on Aetna 280 is misplaced.

18.     Disputed as stated.  Aetna disputes Plaintiff's characterization of the December 28, 2011 correspondence.  *Aetna did not state it would make the decision regarding LTD benefits by January 11, 2012, the LTD effective date but rather, Aetna merely stated that its goal was to do so provided Plaintiff timely*

*complied with submitting the requested documents to Aetna and/or coordinating with her primary care physician.  Aetna clearly advised Plaintiff that it could not complete her claim for LTD benefits until all outstanding information is received for the review.  See* Aetna 306 - 307.  *Plaintiff failed to provide Aetna with any of the necessary and requested information so Aetna administratively denied Plaintiff's LTD claim on January 27, 2012.  See* Aetna Statement at ¶¶18 - 21

19.     Undisputed but with clarification and amplification.  Aetna admits it administratively denied Plaintiff's claim on January 27, 2012 after Plaintiff ignored multiple requests for missing documentation and failed to provide Aetna with any of the requested information.  *See* Aetna Statement at ¶¶ 19 - 21.  *Plaintiff did not appeal this denial until September 14, 2012.  However, on October 24, 2012, after Plaintiff began submitting medical records and other requested information, Aetna advised Plaintiff that it would review the information provided and make a claim determination.  See* Aetna Statement ¶¶ 22, 35 - 43.  *Aetna again denied Plaintiff's claim for LTD benefits by letter dated November 9, 2012 and outlined the reasons for the denial.  See* Aetna Statement at ¶¶ 44 - 49.  *Plaintiff appealed that denial on December 6, 2012 and Aetna upheld that decision on appeal by letter dated March 13, 2013.  See* Aetna Statement at ¶¶62 - 66.  *In that letter, Aetna advised Plaintiff that it had "determined that there was a lack of medical evidence (i.e. progress notes documenting abnormal physical exam findings, such as range of motion*

*measurements in degrees, neurological deficits, etc.) supporting a functional impairment that would have prevented [Plaintiff] from performing the material duties of her own occupation as of January 11, 2012." See* Aetna 370.

20.    Undisputed with clarification.   On September 14, 2012, Plaintiff appealed Aetna's initial January 17, 2012 administrative denial.   *See* Aetna Statement at ¶ 42.

21.    Undisputed with clarification.   On October 24, 2012, Aetna advised Plaintiff that it would review and consider Plaintiff's claim for LTD benefits now that the long outstanding information necessary for a claim determination had been provided.  *See* Aetna Statement at ¶ 43.

22.    Undisputed.  *See* Aetna Statement at ¶ 45.

23.    Undisputed but with correction/clarification.    *Plaintiff appealed Aetna's decision denying LTD benefits on December 6, 2012.  See* Aetna Statement at ¶ 50.

24.    Undisputed with clarification.    *Plaintiff's counsel requested the appeal be placed on hold until February 7, 2013 at counsel's request to allow additional time to submit documents.  Plaintiff's counsel did not provide additional documents but did provide a letter opining as to his reasons why Aetna's decision was wrong.  See* Aetna Statement 52 - 54.

25.     Undisputed with clarification.  *On March 13, 2013, Aetna upheld the November 9, 2012 decision denying LTD benefits.*

26.     Disputed.  *See* Aetna Statement ¶¶ 63 - 64.  *Aetna's decision upholding its decision denying LTD benefits was based on several factors and noted that because Dr. Choudry failed to return the independent physician reviewer's calls, the physician reviewer's review was conducted of only the claim file and the clinical medical evidence contained therein.  The letter does not, as mischaracterized by Plaintiff, indicate Aetna based its decision on Plaintiff's physician's failure to participate in the review process.*

27.     Disputed in part.  Aetna disputes Plaintiff's sanitized and incomplete summary of Dr. Holla's conversation with the independent physician reviewer.  *First, Aetna clarifies that the March 13, 2013 letter was correspondence upholding the denial decision in November, 2012.  See* Aetna Statement at ¶¶62 - 64.   *Next, Plaintiff's Statement ignores the fact that Dr. Holla further reported that he only saw Plaintiff one time and that he did not find Plaintiff was disabled.  See* Aetna Statement at ¶ 57.

28.     Undisputed with clarification.  The independent physician reviewer, Dr. Swotinsky, is Board-certified in Occupational Medicine.  *See* Aetna Statement at ¶ 56.

29.    Disputed as stated.   While Aetna does not dispute the content as quoted in Plaintiff's Statement ¶29, it disputes Plaintiff's failure to present this information in proper context.  *Dr. Swotinsky summarized his review of Plaintiff's medical records into three (3) categories: (A) "Medical conditions;" (B) "Work fitness opinions;" and (C) Additional records requested.  (See Aetna 386 - 387). The text contained in Plaintiff's Statement ¶29 is Dr. Swotinsky's summary of the "Work fitness opinions" of Plaintiff's primary care physician, Dr. Choudry, which Dr. Swotinsky noted as part of his clinical review of the Plaintiff's medical records.  (Id.)*

30.    Disputed.  *To the extent the "reviewer" as pled in Plaintiff's Statement ¶ 30 is Dr. Swotinsky, Dr. Swotinsky did not conduct his review until February 22, 2013, <u>after</u> Aetna's November 9, 2012 letter informing Plaintiff that her claim for LTD benefits was denied.*

*If Plaintiff's date in Statement ¶ 30 was an error and was meant to identify March 13, 2013, the date of Aetna's decision upholding that termination on appeal, then Plaintiff has again sanitized the claim file, failed to provide the proper context, and omitted a critical fact.  First, Aetna admits that in the March 13, 2013 letter, Aetna informed Plaintiff that (i) the independent physician reviewer was not successful in reaching Dr. Choudry and (ii) that Dr. Choudry was sent a copy of the physician reviewer's report and he again failed to provide*

*any response.  However, in implying the suggestion that perhaps Dr. Choudry did not get the report since he was no longer at the practice at which the physician reviewer tried to reach him, Plaintiff ignores the fact that the appeal specialist, upon learning from the physician reviewer that Dr. Choudry had moved on in his practice, called the prior practice to obtain a fax number for Dr. Choudry on March 1, 2013, received a subsequent call from "Brian" at Dr. Choudry's new office providing Dr. Choudry's fax number on March 4, 2013, and faxed the report to that new office.  (See Aetna 269).*

31.    Disputed.  Plaintiff's Statement ¶ 31 asserts pure speculation that is wholly unsupported and entirely non-existent in the Administrative Record.  *To the contrary, the Administrative Record includes a claim note wherein Aetna confirmed with Dr. Holla, Plaintiff's surgeon, that she has insurance and has scheduled surgery.  (See Aetna 210).  Further, the Administrative Record includes claim notes summarizing (i) a telephone call from Plaintiff on June 15, 2012 stating she cancelled the surgery due to a death in the family but rescheduled it for June 29, 2012; and (ii) a telephone call between the disability claim manager and Dr. Holla's office on June 18, 2012 wherein Dr. Holla's office confirmed Plaintiff cancelled surgery due to a reported death in the family and rescheduled it for June 29, 2012.  (See Aetna 210 - 211; 214 - 215)* and Aetna Statement at ¶ 35.  *There*

*are no further notes or records in the Administrative Record explaining why Plaintiff cancelled the June 29, 2012 surgical appointment.*

*Moreover, Plaintiff takes Dr. Swotinsky's comment regarding the paucity of records out of context.   Dr. Swotinsky was specifically asked to provide a description as to Plaintiff's functional impairment after January 11, 2012--the effective date for LTD benefits to which Dr. Swotinsky noted that Plaintiff's medical records regarding her purportedly disabling condition of cervical radiculopathy jump from October 21, 2011 when Plaintiff was first and last seen by Dr. Cantando for a surgical consult to June 5, 2012 when Plaintiff was again seen for a surgical consult but this time by Dr. Shripathi Holla.  Dr. Swotinsky thus opined that "[t]he paucity of records suggests a lack of acuity that would be expected for a truly disabling condition."  (See Aetna 388).*

32.    Disputed.   *Plaintiff mischaracterizes Dr. Swotinsky's report.   Dr. Swotinsky did not dispute the exam findings (which were made by Dr. Choudry but accepted by Dr. Stella) but rather accepted the findings and disagreed with Dr. Stella's opinion that Plaintiff was completely disabled.   In fact, Dr. Swotinsky noted that Dr. Stella's August 2012 opinion was not based on contemporaneous findings.  (See Aetna 389).   To the contrary, Plaintiff had never been seen or examined by Dr. Stella and was last seen and examined by his resident, Dr. Choudry, on November 25, 2011.  (See Aetna 494 - 495).  Dr. Swotinsky, in fact,*

*was told by Dr. Stella's office on February 22, 2013 that Plaintiff had not been seen at Dr. Stella's office "in over a year, is no longer their patient, and goes to Dr. Perrone."  (See Aetna 387).*

33.     To clarify, to the extent Plaintiff is stating that a description of the duties of an Enrollment Services Advisor is contained in the Administrative Record, Aetna agrees the job description is so included.  *See* Aetna 394 - 395.

34.     Undisputed with clarification.   Aetna does not dispute that Dr. Choudry provided a Capabilities and Limitations Worksheet dated March 14, 2012 to Aetna and that this form outlined restrictions and limitations, some of which Plaintiff identified in Plaintiff's Statement ¶ 34.

*However, Dr. Choudry's opinions as to restrictions and limitations were not based on contemporaneous findings.  In fact, the last time Dr. Choudry saw--and examined--Plaintiff was on November 25, 2011 during which Plaintiff's exam was normal or otherwise unremarkable notwithstanding her subjective complaints of neck pain and numbness in her extremities.  (See Aetna 493 - 495).*

35.     Disputed, in part, with clarification.   Aetna does not dispute Dr. Holla's impressions and diagnosis of cervical radiculopathy C6 and C7 on the right nor does Aetna dispute that Dr. Holla offered surgery to Plaintiff for this condition. *However, Aetna disputes Plaintiff's characterization as to Dr. Holla's report being an "expert report" as that term carries legal significance that has yet been*

*established.  Furthermore, Dr. Holla did not render any opinion or commentary on Plaintiff's functional ability and did not render any opinion as to a functional impairment in regard to her abilities to perform her own occupation as an Enrollment Advisor.   Indeed, Dr. Holla's examination found that Plaintiff only showed <u>some</u> weakness on the right grip and right triceps and that the mechanics of cervical spins were curtailed.   Plaintiff's exam was otherwise unremarkable.  (See Aetna 407).  Last, Plaintiff erroneously states that surgery was scheduled for August 15, 2012; it was, in fact, scheduled for June 15, 2012 but Plaintiff cancelled it.  (See Aetna's Response to Plaintiff's Statement at ¶ 31 supra.)*

36.    Disputed.   Aetna disputes Plaintiff's characterization of Dr. Stella's "To Whom It May Concern" letter as "report."   *Indeed, the medical records and other documents in the Administrative Record show that Dr. Stella never saw or examined Plaintiff.   Next, these records show that the last time Plaintiff was seen by anyone in Dr. Stella's office was November 25, 2011 when Plaintiff was seen by Dr. Choudry who, in turn, discussed that exam with a Dr. Wylie.  (See Aetna 493 - 495).   The records further show that the last time Dr. Choudry discussed any examination of Plaintiff with Dr. Stella was on November 6, 2011 after Dr. Choudry's October 31, 2011 examination of Plaintiff.   Therefore, Dr. Stella's August 2012 opinion was <u>not</u> based on contemporaneous findings and was*

*contradicted by the physical examination findings from October and November 2011.  (See Aetna 493 - 495; 496 - 505).*

37.     Disputed.  Aetna disputes any Statement based on documents outside the Administrative Record.   In this Statement, Plaintiff refers to a claim note contained in the STD claim file which is not before this Court and is not contained in the Administrative Record.   Furthermore, what Aetna's STD claim unit did as far as an LTD referral is irrelevant and, essentially, a moot point because Aetna does not dispute that Plaintiff submitted a claim for LTD benefits which Aetna fully and fairly reviewed, including on appeal.

38.     Disputed.  Plaintiff mis-states or misunderstands this referenced claim note.  *On January 27, 2012, Plaintiff's initial LTD claim was administratively denied after Plaintiff failed to provide the requested documents and information to Aetna.  (See* Aetna Statement at ¶ 21).  *Plaintiff did not appeal that denial until September 14, 2012.  Plaintiff's Statement at ¶ 38 references a claim note at Aetna 241 which is not a January 11, 2012 claim note as described by Plaintiff in Statement ¶ 38 but rather is a claim note opened on September 18, 2012 and closed on September 28, 2012 regarding Aetna's triage review of Plaintiff's September 14, 2012 appeal.  A subsequent claim note opened October 12, 2012 and closed October 24, 2012 reflects Aetna's decision to re-open Plaintiff's claim. (See* Aetna 243 - 244).  *Consistent with that claim note, on October 24, 2012,*

16

*Aetna elected to make a claim determination based on the various documents and information Aetna received between March and August 2012, essential rescinding the administrative denial.  (See Aetna Statement at ¶¶ 22 - 43; and Aetna 238).*

Respectfully submitted,

*/s/ Melissa M. Weber*
Melissa Murphy Weber, Esquire
ELLIOTT GREENLEAF
925 Harvest Drive, Suite 300
Blue Bell, PA  19422
215-977-1026
mmw@elliottgreenleaf.com

*Counsel for Defendant*

Dated: January 29, 2015

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this date, the foregoing was filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document.


/s/ *Melissa Murphy Weber*
Melissa Murphy Weber, Esquire


DATED:    January 29, 2015